UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SHARON MULLEN
and RENEE MULLEN,

                    Plaintiffs,

                                                    Case No. 23-cv-275-pp

        v.

CITY OF RACINE,

                    Defendant.

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (DKT. NO. 34), DENYING AS MOOT PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 2), DENYING AS MOOT PLAINTIFFS' MOTION FOR DISCOVERY (DKT. NO. 43) AND DISMISSING CASE**

**I.      Factual and Procedural Background**

        Plaintiffs Sharon Mullen and Renee Mullen own a three-story commercial building located at 221 Sixth Street in downtown Racine, Wisconsin.[1] See Dkt. No. 1-1 at 6. Between June 2021 and October 2022, the plaintiffs applied for and received from defendant City of Racine several permits to complete repair work on their property's street-facing façade. Id. at 6-12. In November 2022, the defendant became aware that the plaintiffs had erected "an obstruction

_____

[1] The amended complaint which the defendant asks the court to dismiss does not recount the facts contained in the original complaint. The facts in this section come from documents that the plaintiffs attached to their original complaint, including certain permits they received from the City of Racine Building Department and their correspondence with the City of Racine's Department of Public Works. Dkt. No. 1-1. The plaintiffs included the same documents in a filing titled, "Rule 26(f) Report," dkt. no. 23, and, more recently, attached the documents as exhibits to their brief in opposition to the defendant's motion to dismiss, dkt. no. 39-1.

1

resembling a scaffolding . . . on the city-owned sidewalk abutting the north side (front) of [the plaintiffs'] property." Id. In a letter dated November 29, 2022, the defendant notified the plaintiffs that the structure was "in violation of Wisconsin Statutes section 66.0425, which forbids [Wisconsin residents] from placing or causing to be placed any obstruction beyond [their] lot line, unless and until [they] have been granted by the Common Council of the City of Racine a 'privilege' (i.e. the authority) to do so." Id. The letter also explained that the permits the plaintiffs had received "allow only for the temporary closure of public right-of-way and do not permit or contemplate any obstruction to be placed within the public right-of-way (e.g. on the sidewalk) pursuant to such permit." Id. The letter ordered the plaintiffs "to remove the obstruction that [they] erected or caused to be erected on the public right-of-way and abutting [their] property no later than December 31, 2022, or thereafter it shall be removed at [their] expense, pursuant to Wisconsin Statutes section 66.0425(4)." Id. at 12, 14.

The defendant sent the plaintiffs a follow-up letter, dated January 11, 2023, reiterating that the scaffolding was on a city-owned sidewalk. Dkt. No. 1-1 at 21. The letter reiterated that under Wis. Stat. §66.0425, the scaffolding required a "privilege" from Racine's Common Council, and that because the plaintiffs had failed to remove the scaffolding by the December 31, 2022 deadline communicated in the defendant's November 2022 letter, the plaintiffs were subject to the penalties outlined in Wis. Stat. §66.0425(4). Id. The letter stated that in addition to Wis. Stat. §66.0425, the plaintiffs were in violation of Section 82-91 of the City of Racine Municipal Code of Ordinances, which "forbids [them] from obstructing or encroaching upon any sidewalk adjoining [their] property unless and until [they] obtain a permit under section 82-93 of

2

the City of Racine Municipal Code of Ordinances that is either granted by the Common Council or with written permission [from the Commissioner of Public Works]." Id. The letter acknowledged that the plaintiffs "possess two building permits to complete [their desired repair work]," but explained that to "effectuate the work under these permits," the plaintiffs needed to obtain either a privilege under Wis. Stat. §66.0425 or a permit under §82-93 of the Racine Municipal Code by February 4, 2023. Id. The letter ended by warning the plaintiffs that if they failed to do either of these things by February 4, 2023, the "obstruction" would be removed at the plaintiffs' expense and that they would be exposed to penalties under those laws. Id.

On February 28, 2023 (about forty-five days after the January 11, 2023 letter), the plaintiffs—representing themselves—filed a complaint in this court, alleging that the defendant, through its "employee[s]/official[s] [who] are not named as individual Defendants," had interfered with their ability to repair their property by (1) providing them with incorrect advice on how to complete their desired repair work, (2) requiring them to hire a structural engineer and/or contractor to complete the repair work, (3) requiring them to obtain certain permits to complete the repair work, and (4) requiring that they remove the safety barrier and scaffolding obstructing the sidewalk adjoining their property. Dkt. No. 1 at 9-48. The complaint purported to raise claims under two federal regulations (25 C.F.R. §11.448 and 5 C.F.R. §2635.101), two federal criminal statutes (18 U.S.C. §242 and 18 U.S.C. §1001), two civil rights statutes (42 U.S.C. §1981 and 42 U.S.C. §1983) and the Fourteenth Amendment's Due Process Clause.

On April 21, 2023, the defendant moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing that because the plaintiffs

had failed to raise cognizable claims under any of the statutes and regulations cited in their complaint, the court should dismiss the complaint under Fed. R. Civ. P. 12(b)(6). Dkt. Nos. 15; 16 at 4-16. In its reply brief, the defendant added another argument in favor of dismissal. Dkt. No. 28. It stated, "Notably, an enforcement action is currently proceeding in the Village of Caledonia Municipal Court, and trial is scheduled to begin on February 19, 2024." Dkt. No. 28 at 3 (citing City of Racine v. Sharon L. Mullen and Renee H. Mullen, Vill. of Caledonia Municipal Court, Case Nos. SS2353 and SS2354). The defendant argued that the court should dismiss the case under the Younger abstention doctrine, citing Younger v. Harris, 401 U.S. 37, 91 (1971).

The defendant attached to the affidavit of defense counsel a copy of a complaint filed in the Municipal Court for the City of Racine. Dkt. No. 19-1. The complaint was filed by the City of Racine against Sharon and Renee Mullen; it is undated, although it reflects that the "D.O.V."—presumably the date of the alleged municipal code violations—was January 4, 2023. Id. at 1. The complaint alleged a single violation of City of Racine Municipal Code of Ordinances §82-91 (obstruction of the sidewalk without a permit or applicable exception). Id. at 1-2. Although the complaint does not bear a filing date, the assistant city attorney signed it on February 7, 2023 and the summons portion required Sharon and Renee Mullen to appear on April 27, 2023, id. at 2, implying that the complaint was filed sometime between February 7 and April 27, 2023.

During a motion hearing on December 13, 2023, the court delivered an oral ruling on the defendant's motion for judgment on the pleadings. Dkt. Nos. 29, 30 (audio of motion hearing); 31 (court minutes from hearing). The court granted with prejudice the defendant's motion as to all claims in the complaint

but the civil rights claim under 42 U.S.C. §1983. Dkt. No. 31 at 1-2. Regarding that claim, the court explained that although the complaint did not identify a right guaranteed by the U.S. Constitution that the defendant had violated, the plaintiffs' opposition materials had mentioned their Fourteenth Amendment rights. Id. at 2. The court explained the difference between the procedural component and the substantive component of the Fourteenth Amendment's Due Process Clause, observing that the plaintiffs' own factual allegations demonstrated that the defendant *had* been providing procedural due process (notice of violations, hearings, *etc.*), and that the plaintiffs' asserted "right to repair one's property" was not a recognized substantive Fourteenth Amendment Due Process Right. Id.

The court identified two other problems with the complaint, relating to the fact that the plaintiffs had brought their claims in federal court. Dkt. No. 31 at 2. First, the court recounted that the defendant had filed an enforcement action that was pending in the City of Racine Municipal Court. Id. at 2. The court described the doctrine of abstention, explaining to the plaintiffs that a federal court cannot insert itself into ongoing local litigation. Id. The plaintiffs told the court that they believed they could not get a fair trial in Racine, but defense counsel advised the court that the enforcement action had been moved from Racine Municipal Court to Caledonia Municipal Court to address those concerns. Id. The court told the plaintiffs that regardless of where the local enforcement action was pending, as long as there was ongoing local litigation, a federal court could not intervene. Id. Second, the court stated—incorrectly— that before a plaintiff can bring a claim for an alleged constitutional violation under §1983, that plaintiff first must "exhaust" her state remedies by giving the

5

local courts the opportunity to rule on them. Id. The court observed that the plaintiffs did not appear to have done that. Id.

Toward the end of the hearing, the plaintiffs asked the court if they could amend their complaint to try to state a claim under §1983. Dkt. No. 31 at 2. The court expressed doubt that amending the complaint would resolve the abstention and exhaustion issues, but the plaintiffs persisted. Id. at 2-3. The court granted the defendant's motion for judgment on the pleadings as to the §1983 claim *without* prejudice so that the plaintiffs would have the opportunity to amend the complaint to try to state a §1983 claim. Id. at 3. The court ordered that the plaintiffs must file an amended complaint in time for the court to receive it by the end of the day on January 16, 2024, stressing to the plaintiffs that they could amend only the §1983 claim. Id. at 3-4.

## II.     The Amended Complaint (Dkt. No. 33)

On January 16, 2024, the court received the plaintiffs' amended complaint, which they titled "Amendment of Claim under 42 USC Section 1983." Dkt. No. 33. The amended complaint alleges a "class-of-one" §1983 claim under the Fourteenth Amendment's Equal Protection Clause. Id. at 4. The plaintiffs assert that they "are using the 14th Amendment Equal Protection Clause, Classification of One [to allege that] they have been intentionally treated differently from others similarly situated and that there is no rational basis for the different treatment." Id. at 5. They allege that the "Defendant, City of Racine and its employee/officials exercised differential treatment towards Plaintiff" by continually obstructing them from repairing their building's façade, and that the differential treatment "was the result of prosecutorial discretion that was a vindictive action, illegitimate animus or ill will." Id. at 5, 7. They allege that "[n]o other contractors have been told to build the safety barrier,

6

issued the building permit for the safety barrier, and later told [the safety barrier] is an encroachment and needs to be taken down." Id. at 7.

Without mentioning it, the plaintiffs appear to cast the amended complaint's class-of-one, equal-protection-clause claim under the framework articulated in Monell v. New York City Dep't of Social Services, 436 U.S. 658 (1978). The plaintiffs raise a failure-to-train theory of Monell liability, alleging that the defendant's "employee[s]/officials" are "inadequately trained by the Defendant/City of Racine" and that "[t]he inadequacy of the training has actually caused constitutional depravation [sic] to the Plaintiffs." Id. at 5, 6. The amended complaint does not address the fact that at the time the plaintiffs filed it, there was a municipal enforcement action pending in Caledonia municipal court.

### III. Defendant's Motion to Dismiss (Dkt. No. 34)

On January 30, 2024, two weeks after the court received the plaintiffs' amended complaint, the defendant filed a motion to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(6). Dkt. No. 34. The defendant argued that the court should dismiss the amended complaint on abstention grounds. Dkt. No. 35 at 5-8, citing Younger v. Harris, 401 U.S. 37 (1971). It contended that Younger requires dismissal because of the related enforcement action pending in Caledonia municipal court, which was scheduled for trial on February 19, 2024. Id. The defendant asserted that dismissal also is warranted because the equal protection claim is not ripe for adjudication and because the plaintiffs had not exhausted their available state and administrative remedies. Id. at 8-11. The defendant asserted that dismissal is warranted because the amended complaint fails to state a cognizable Fourteenth Amendment equal protection violation, id. at 11-14, and maintained that even if the amended

complaint did state a cognizable Fourteenth Amendment equal protection violation, dismissal would be warranted because the plaintiffs have not adequately alleged a theory of municipal liability, id. at 14-20.

On March 26, 2024, after the plaintiffs responded, dkt. no. 39, the defendant filed a reply brief, dkt. no. 40. The defendant attached to that reply brief a copy of the February 22, 2024 decision issued by the Village of Caledonia municipal judge. Dkt. No. 41-1. Judge Keller explained that at a five-hour trial, he heard testimony (including from federal plaintiffs Sharon and Renee Mullen) and received exhibits, after which he found that Sharon and Renee Mullen had "caused an obstruction to the sidewalk in connection with the renovations/repairs to their building on 6th Street" and that they "had not sought or otherwise secured the appropriate permission to cause an obstruction onto the sidewalk in front of their property." Id. at 2. Judge Keller explained that he was writing to "provide clarity to the proceedings," because it had been "difficult to maintain an orderly presentation of evidence, as [Sharon and Renee Mullen] were argumentative and pursued a line of questioning that was, in the Court's opinion, irrelevant to the issues presented by the case." Id. He explained that although "[s]everal different 'types' of permits were introduced into evidence," those types of permits did not authorize an encroachment onto the sidewalk; such an encroachment required "a permission issued under Wis. Stat. 66.0425." Id.

Judge Keller recounted that Sharon and Renee Mullen had "advanced multiple theories in support of their defense. These theories ranged from due process claims, constitutional claims or civil rights violations and equitable defenses in the form of latches, to name a few." Id. at 3. He stated his belief that "all of these theories were misguided, unsupported and so lacking in legal

8

foundation that they do not warrant a discussion." Id. Judge Keller interpreted Sharon and Renee Mullen's "presentation as one advancing that the Street Closing Permit . . . granted them authority to erect the scaffolding that encroached upon the sidewalk." Id. He disagreed, finding that the Street Closing Permit "sa[id] nothing about permission to encroach onto the sidewalk." Id. Judge Keller concluded that Sharon and Renee Mullen "were referred to [§§82-92 and 82-93—the ordinances that provide for exceptions to the sidewalk encroachment prohibition] and simply chose to ignore them, insisting that they were compliant, despite the City'[s] notice that they were not." Id. at 4. He reiterated that he was granting judgment in favor of the city. Id. He imposed a penalty of $25 per day from the date of service of the complaint to the date of trial—a total of $8,725. Id. at 5. Judge Keller gave Sharon and Renee Mullen sixty days to pay, but advised them that within that sixty days, if they obtained a proper permit, came to an agreement with the City of Racine about the issuance of a permit or removed the obstruction, he would reduce the fine to $1,000. Id. He said that if the parties came to "some other agreement relating to the issuance of an appropriate permit or removal of the obstruction, the court will re-consider the imposing of the aforementioned forfeiture at the request of either party." Id. Finally, Judge Keller advised Sharon and Renee Mullen that they had a right to appeal under Wis. Stat. §800.14. Id.

## IV.  Analysis

### A.  Exhaustion/Ripeness

At the December 13, 2023 hearing, this court advised the plaintiffs that "before a plaintiff could bring a claim for an alleged constitutional violation under 42 U.S.C. §1983, that plaintiff had to 'exhaust' state remedies by

9

presenting the claims to the state (or municipal) courts first." Dkt. No. 31 at 2. The court was incorrect, and that advice to the plaintiffs was incorrect. Generally, "[n]onprisoners need not exhaust state remedies before suing under § 1983." Wilson v. Ill. Dep't of Fin. and Prof. Regulation, 871 F.3d 509, 512 (7th Cir. 2017) (citing Patsy v. Bd. of Regents, 457 U.S. 496 (1982)). See also, Knick v. Twp. of Scott, Penn., 588 U.S. 180, 185 (2019) (quoting Heck v. Humphrey, 512 U.S. 477, 480 (1994) ("exhausting of state remedies 'is *not* a prerequisite to an action under [42 U.S.C.] §1983.'")

Seizing on the court's misstatement of the law, the defendant cites Williamson Cnty Reg'l.Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985) for the proposition that "[a] plaintiff must exhaust available state and administrative remedies before she can bring § 1983 civil rights claims arising from land-use decisions." Dkt. No. 35 at 8. Williamson is not on all fours with the facts of this case. In Williamson, a bank that had acquired properties through foreclosure filed suit in federal court under §1983, arguing that the local planning commission's refusal to approve plats for developing the properties constituted a taking without just compensation and asking the court to estop the planning commission from refusing to approve the project. Williamson, 472 U.S. at 181-182. The district court ruled in favor of the planning commission; the court of appeals reversed. Id. at 183-184. The United States Supreme Court concluded that the planning commission's claim was not "ripe." Id. at 186. Explaining that "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue," id. at 186 (citations omitted), the Supreme Court concluded that the

10

bank had not yet used the variance process to seek variances to resolve several of the commission's concerns about approving the plats, id. at 188. Nor had the bank sought "compensation through the procedures the State ha[d] provided for doing so." Id. at 194.

The Seventh Circuit has explained that Williamson articulates "a special ripeness doctrine for constitutional property rights which preclude[s] federal courts from adjudicating land use disputes until: (1) the regulatory agency has had an opportunity to make a considered definitive decision, and (2) the property owner exhausts available state remedies for compensation." Forseth v. Vill. of Sussex, 199 F.3d 363, 368 (7th Cir. 2000). The court observed that a property owner "may not avoid Williamson by applying the label 'substantive due process' to the claim. So too with the label 'procedural due process.' Labels do not matter. A person contending that state or local regulation of the use of land has gone overboard must repair to state court." Id. (quoting River Park, Inc. v. City of Highland Park, 23 F.3d 164, 167 (7th Cir. 1994).

Although the concept that a person who argues that a local ordinance goes too far must go to state court seems to apply in this case, the defendant's argument that the plaintiffs must wait until the local/state proceeding that the defendant brought against the plaintiffs has concluded doesn't fit comfortably in the Williamson framework. And the United States Supreme Court has overruled its own holding in Williamson requiring state-court litigation of takings claims before filing a federal takings suit. Knick, 588 U.S. at 205-206. Today, "[t]he 'general rule' is that plaintiffs may bring constitutional claims under § 1983 'without first bringing any sort of state lawsuit, even when state court actions addressing the underlying behavior are available.'" Id. at 194

11

(quoting D. Dana & T. Merrill, Property: Takings 262 (2002) and citing <u>McNeese</u> <u>v. Bd. of Ed. For Community Unit School Dist. 187</u>, 373 U.S. 668, 672 (1963)).

Further, the plaintiffs have not alleged a taking under the Fifth Amendment. The amended complaint alleges that the defendant treated the plaintiffs differently than others who were similarly situated to them, and that it did so because of vindictive prosecution. Dkt. No. 33 at 5. The plaintiffs assert that the defendant's employees were deliberately indifferent to their rights and were inadequately trained, which, they allege, "has actually caused constitutional depravation to the rights of Plaintiffs." <u>Id.</u> They argue that to "take down the safety barrier and scaffolding is just to set up an accident." <u>Id.</u> at 5. And they argue that they were treated differently from "similar contractors" when they were required to build a safety barrier, obtain a permit for the barrier and then be told that the barrier constituted an "encroachment" that needed to be taken down, as well as when they were "ordered" to sign an agreement. <u>Id.</u> at 7. None of these claims resemble a takings claim. And the plaintiffs have abandoned their due process claims. They are proceeding only on a Fourteenth Amendment class-of-one equal protection claim, which makes any takings-related exhaustion requirement (if one can be said to exist) irrelevant. The court will not dismiss the amended complaint for the plaintiffs' failure to commence litigation in municipal or state court before coming to federal court.

The defendant also argued in its brief in support of the motion to dismiss that the plaintiffs' federal claims are not ripe for adjudication because at that time—in January 2024—the plaintiffs still had several options available to them: they could apply for a permit from the City of Racine Common Council or ask permission from the Commissioner of Public Works to obstruct the

12

sidewalk (a procedure the defendant argues is required under City of Racine Municipal Code of Ordinances 82-93); if that failed, they could appeal; they could use the enforcement action then pending in the Caledonia Municipal Court to challenge the requirement that they obtain a permit; they could appeal if that challenge failed; and they could petition the circuit court for a writ of mandamus compelling the City of Racine to issue them a permit. Dkt. No. 35 at 9-10. Some of those options no longer are available. Because the enforcement action has been resolved, the plaintiffs no longer have the option to challenge the permit requirements in that case (although they had, and used, the opportunity when the litigation was pending). The Wisconsin Circuit Court Access website shows that on March 20, 2024, the plaintiffs appealed to the Racine County Circuit Court. City of Racine v. Sharon Mullen, *et al.*, Case No. 2024CV368 (Racine County Circuit Court), available at https://wcca. wiscourts.gov. The circuit court dismissed the appeal on May 7, 2024. Id.

As for the other procedures the defendant says are available to the plaintiffs—seeking the appropriate permit, negotiating with the City of Racine, petitioning the circuit court for a writ of mandamus—the court suspects those likely would be unsuccessful. At any rate, the court need not get into the weeds of constitutional ripeness doctrine. The court must dismiss the lawsuit because it does not state a claim.

B.    Abstention

Federal Rule of Civil Procedure 12 lists several defenses that can be raised through a motion to dismiss, including lack of subject-matter jurisdiction (Rule 12(b)(1)), improper venue (Rule 12(b)(3)) and failure to state a claim upon which a federal court may grant relief (Rule 12(b)(6)). "A motion to dismiss on abstention grounds does not fit neatly into Rule 12(b)(1) or Rule

13

12(b)(6)." <u>Bolton v. Bryant</u>, 71 F. Supp. 3d 802, 808 n.2 (N.D. Ill. 2014). The Seventh Circuit has treated motions to dismiss based on some types of abstention as motions to dismiss for failure to state a claim under Rule 12(b)(6). Because the court is not dismissing on abstention grounds, it need not resolve that issue.

### 1. *Misapprehensions by the Plaintiffs*

As an initial matter, the court addresses two arguments the plaintiffs raised toward the end of their (oversized)[2] brief. The defendant asked the court to dismiss the amended complaint—and the case—for several reasons. One of those reasons is because at the time the defendant filed its motion to dismiss the amended complaint, the enforcement action in the Caledonia Municipal Court was pending; the defendant asked the court to dismiss under the <u>Younger</u> abstention doctrine. The plaintiffs responded that the <u>Younger</u> abstention doctrine did not apply because the pending municipal court case was not criminal. Dkt. No. 39 at 35-36. That is not correct. Although the <u>Younger</u> abstention "doctrine was initially limited in its application to pending state *criminal* prosecutions, its scope has been expanded to apply to state judicial and administrative proceedings in which important state interests are at stake." <u>Forty One News, Inc. v. County of Lake</u>, 491 F.3d 662, 665 (7th Cir. 2007) (emphasis in original) (citing Erwin Chemerinsky, FEDERAL JURISDICTION §13.3.3.–13.3.4, at 817–27 (4th ed. 2003)). <u>See also</u>, <u>Vill. of DePue, Ill. v. Exxon Mobile Corp.</u>, 537 F.3d 775, 783 (7th Cir. 2008) ("although originally applied to prevent interference only with criminal proceedings, today *Younger* applies to some civil as well as criminal proceedings."). The Seventh Circuit Court of

---

[2] This court's Civil Local Rule 7(f) says that a legal memorandum in opposition to a motion "must not exceed 30 pages." The plaintiffs' opposition brief is thirty-eight pages. Dkt. No. 39.

Appeals has held that "the quasi-criminal prosecution of the violation of an ordinance . . . is an adequate state proceeding for the purposes of Younger[.]" Forty One News, 491 F.3d at 665 (citations omitted).

The plaintiffs also argue that the Anti-Injunction Act does not bar this court from enjoining the defendant's parallel enforcement action in state court. Dkt. No. 39 at 36. That is correct, as far as it goes. The Anti-Injunction Act does not bar federal courts from enjoining ongoing state court proceedings where, as here, the federal court case is brought under 42 U.S.C. §1983. Mitchum, 407 U.S. at 242-243 (holding that claims under 42 U.S.C. §1983 meet the "expressly authorized" exception to the Anti-Injunction Act). But the defendant has not argued that the Anti-Injunction Act bars this court from enjoining the state court proceedings. And the fact that the Anti-Injunction Act does not bar the court from enjoining an ongoing state court enforcement action does not mean that the principles underlying the Younger abstention doctrine do not favor abstention. Id. at 243 ("In . . . concluding [that §1983 is an exception to the Anti-Injunction Act], we do not question or qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding.").

2.    *Younger* Abstention

The Younger abstention doctrine "directs federal courts to abstain from exercising jurisdiction over federal claims that seek to interfere with pending state court proceedings." J.B. v. Woodard, 997 F.3d 714, 722 (7th Cir. 2021) (citing Younger, 401 U.S. at 43-44).

> The doctrine applies in only three limited categories of cases . . .: where federal court intervention would intrude into ongoing state criminal proceedings, into state-initiated civil enforcement proceedings akin to criminal prosecutions, or into civil proceedings

15

> implicating a state's interest in enforcing orders and judgments of
> its courts.

Id. (citing Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 72-73 (2013)).

"Younger abstention is appropriate only when there is an action in state court against the federal plaintiff and the state is seeking to enforce the contested law in that proceeding." Forty One News, 491 F.3d at 665.

> The rule in *Younger* protects the principles of "equity, comity, and
> federalism," which 'have little force in the absence of a pending state
> proceeding.' [*Huffman v. Pursue, Ltd.*, 420 U.S. 592, 602-03 (1975)]
> (quotation omitted). It also is concerned with preventing "duplicative
> legal proceedings, "disruption of the state criminal justice system"
> and the negative implication that state courts are unable "to enforce
> constitutional principles." *Id.* at 604, 608 . . . .

Village of DePue, 537 F.3d at 783. Put another way, "[The Younger abstention doctrine] reflects Congress's 'desire to permit state courts to try state cases free from interference by federal courts,' except in special circumstances." Stroman Realty, Inc. v. Martinez, 505 F.3d 658, 662 (7th Cir. 2007) (citing Green v. Benden, 281 F.3d 661, 666 (7th Cir. 2002) (citing Middlesex Cnty. Ethics Comm'n v. Garden State Bar Ass'n, 457 U.S. 423, 432, 436-37 (1982)).

"There is no question that the quasi-criminal prosecution of the violation of an ordinance . . . is an adequate state proceeding for the purposes of Younger," Forty One News, 491 F.3d at 666 (citing Ciotti v. County of Cook, 712 F.2d 312, 313 (7th Cir. 1983) and Mannheim Video, Inc. v. County of Cook, 884 F.2d 1043, 1044 (7th Cir. 1989)), and the Seventh Circuit has held as much multiple times. "The policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved." Id. at 665.

> When the state proceeding is civil, *Middlesex County Ethics Comm.*
> requires federal courts to "abstain from enjoining ongoing state
> proceedings that are (1) judicial in nature, (2) implicate important

16

state interests, and (3) offer an adequate opportunity for review of constitutional claims...." *Majors v. Engelbrecht*, 149 F.3d 709, 711 (7th Cr. 1998))

*Id.* at 665-66 (referencing Middlesex Cnty.,457 U.S. at 432). See also, Martinez, 505 F.3d at 662 ("Therefore, federal courts must abstain from enjoining or otherwise interfering with ongoing state court proceedings that are (1) judicial in nature, (2) involve important state interests, and (3) provide an adequate opportunity to raise the federal claims, as long as (4) no exceptional circumstances exist that would make abstention inappropriate.") (citations omitted).

Timing is relevant to Younger abstention. Younger abstention is proper "only when state court proceedings are initiated 'before any proceedings of substance on the merits have taken place in federal court . . . .'" Ewell v. Toney, 853 F.3d 911, 916 (7th Cir. 2017) (quoting Hicks v. Miranda, 422 U.S. 332, 349 (1975)). However,

> [t]his does not call for a simple check of the calendar to see which case was filed first. A federal court should abstain when a state criminal complaint is filed while the federal litigation is an "embryonic stage" and no contested matter has been decided. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 929 . . . (1975). In all other cases, "federal courts must normally fulfill their duty to adjudicate federal questions properly brought before them." *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 238 . . . (1984). Once a case has progressed beyond the embryonic stage, "considerations of economy, equity, and federalism counsel against *Younger* abstention . . . ." *Id.*

*Id.* at 916-917.

    a.   Timing

The defendant asserted in its motion for judgment on the pleadings that on February 7, 2023, it "issued a citation to Plaintiffs returnable to the City of Racine Municipal Court" . . . "seeking to enforce Section 82-91 of the City of Racine Municipal Code of Ordinances . . . ." Dkt. No. 16 at 3. As the court has

17

explained (and as Judge Keller stated in his order), it is not clear when in the municipal enforcement action the defendant filed the complaint. The Assistant City Attorney dated the summons February 7, 2023, but there is no date-filed stamp showing when the document was filed with the municipal court. Presumably it was filed before the summons return date of April 27, 2023 (Dkt. No. 19-1 at 1-2). But the court does not know whether it was filed on February 7, 2023—the date it was signed—or at some other point between February 7, 2023 and April 27, 2023.[3] The plaintiffs filed this lawsuit on February 28, 2023. Dkt. No. 1. The (fifty-page) complaint makes no mention of a municipal lawsuit, nor does the (thirty-six-page) amended complaint. The court cannot be sure that the municipal lawsuit was pending on February 28, 2023, the day the plaintiffs filed this federal lawsuit.

But the precise date on which the defendant filed its municipal enforcement action isn't determinative; as the Seventh Circuit said in Ewell v. Toney, 853 F.3d at 916-17 (citation omitted), the federal court "should abstain when a state criminal complaint is filed while the federal litigation is in an 'embryonic stage' and no contested matter has been decided." Even if the defendant did not file the municipal enforcement action until after the plaintiffs filed this federal lawsuit, Younger abstention still could apply, because this federal court did not decide any contested matter until, at the earliest, October 18, 2023, when it denied as moot the plaintiffs' motion to consolidate. See Dkt. No. 25. As the Seventh Circuit put it, whenever the defendant filed the civil enforcement action in Racine County Circuit Court, "nothing important relating

---

[3] In a "Motion for Discovery" filed on May 8, 2024, the plaintiffs asserted that on March 7, 2023, the defendant had filed the municipal court summons and complaint and had served them on the plaintiffs. Dkt. No. 43 at 5.

to the merits [of this federal case] ha[d] happened yet." <u>Forty One News</u>, 491 F.3d at 666.

        b.     Whether The State-Initiated Civil Enforcement Proceedings are "Ongoing"

As explained above, <u>Younger</u> abstention is appropriate only where the "federal court intervention would intrude . . . into state-initiated civil enforcement proceedings akin to criminal prosecutions . . . ." <u>Woodard</u>, 997 F.3d at 722. In January 2024, when the defendant filed its motion to dismiss the amended complaint, the state-initiated civil enforcement proceedings had not been resolved. Since then, the Caledonia Municipal Court has ruled, the plaintiffs have appealed and the Racine County Circuit Court dismissed the appeal on May 7, 2024. <u>Mullen</u>, Case No. 2024CV368 (Racine County Circuit Court), available at https://wcca.wicourts.gov. That raises the question of whether there is, any longer, a state-initiated civil enforcement proceeding into which this federal court might intrude if it did not abstain.

The district court for the Central District of California has held (in a decision that is not binding on this court) that state proceedings "are deemed ongoing until state appellate review is completed." <u>Cook v. Harding</u>, 190 F. Supp. 3d 921, 936 (C.D. Cal. 2016) (citing <u>Gilbertson v. Albright</u>, 381 F.3d 965, 969 n.4 (9th Cir. 2004)). Similarly, the district court for the Eastern District of New York (in a decision that is not binding on this court) has held that "[a] state action is considered 'pending' for *Younger* purposes through the completion of the state appeals process, even if the federal plaintiff has failed to exercise his state appellate rights." <u>Jureli, LLC v. Schaefer</u>, 53 F. Supp. 3d 552, 559 (E.D.N.Y. 2014) (quoting <u>Choi v. Kim</u>, Case No. CV 96-2086(RJD), 1997 WL 722708, at *5 (E.D.N.Y. Sep. 25, 1997)).

19

Under Wis. Stat. §808.04(1), a party must appeal within forty-five days of the entry of final judgment if written notice of the entry of that final judgment is given within twenty-one days of the final judgment, or within ninety days of entry if that notice is not given. If the plaintiffs received the appropriate notice on May 7, 2024, their forty-five-day period for filing an appeal would have expired around June 21, 2024. If they received the notice later than May 7, 2024, their period for appealing would have expired on August 5, 2024.

A search of the Supreme Court and Court of Appeals Access site reveals no evidence that, to date, the plaintiffs have appealed from the Racine County Circuit Court's May 7, 2024 decision dismissing their appeal. In a "Motion for Discovery" filed in federal court on May 8, 2024—the day after the Racine County Circuit Court dismissed the plaintiffs' appeal of the municipal court ruling—the plaintiffs stated that they "made a mistake by filing for a new trial which they mistakenly assumed as a continuation of the municipal action." Dkt. No. 43 at 11. They asserted that they "failed to serve the City of Racine within the 20-day limit" and that they "should have requested a review of the Court Proceedings." Id. The plaintiffs did not identify the court in which they filed "for a new trial," or when they made that filing. The Racine County Circuit Court docket does not reflect a motion for a new trial; the last entries on the circuit court docket are the order dismissing the appeal and a May 22, 2024 "certificate of transmittal." Mullen., Case No. 2024CV368 (Racine County Circuit Court), available at https://wcca.wicourts.gov.

As best the court can tell, then, the civil enforcement action no longer is "ongoing," such that a decision by this court would interfere with that proceeding. In an abundance of caution, however, the court will complete the Younger analysis in the event that it has missed something.

c.    The <u>Middlesex</u> Factors

If, somehow, the state-initiated civil enforcement proceedings are "ongoing," the court must determine whether the "ongoing state proceedings . . . are (1) judicial in nature, (2) implicate important state interests, and (3) offer an adequate opportunity for review of constitutional claims." <u>Forty One News</u>, 491 F.3d at 665-66 (quoting <u>Majors</u>, 149 F.3d at 711 (citing <u>Middlesex Cnty.</u>, 457 U.S. at 429)). If all three factors <u>Middlesex</u> factors are met, it is appropriate for this federal court to abstain unless the plaintiff can show that the municipal court proceeding was brought in bad faith (*e.g.*, due to a bias against the plaintiffs or to harass them). <u>See</u> <u>Majors</u>, 149 F.3d at 711 (citing <u>Middlesex Cnty.</u>, 457 U.S. 429).

As to the first factor, the state-initiated civil enforcement proceeding—which, following a five-hour trial, resulted in a municipal court judgment that had not yet been disturbed on appeal—is judicial in nature. <u>Majors</u>, 149 F.3d at 712 ("For purposes of *Younger* abstention, administrative proceedings are 'judicial in nature' when they are coercive—i.e., state enforcement proceedings[.]"); <u>see also</u> <u>Prentis v. Atl. Coast Line Co.</u>, 211 U.S. 210, 226 (1908) ("A judicial inquiry investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist."). The first <u>Middlesex</u> factor is met.

Turning to the second factor, the defendant's ability to enforce its own municipal ordinances pertaining to local land use is an "important state interest" for purposes of <u>Younger</u> abstention. <u>See</u> <u>Miller</u>, 784 F.3d at 1119 (stating that because "federal courts . . . are not zoning boards of appeal[,]" "[s]tate and local land-use  decisions are entitled to great deference when constitutional claims are raised in federal court" (quoting <u>Glenmore Wind Farm</u>

21

#1, LLC v. Town of Glenmore, 769 F.3d 485, 487 (7th Cir. 2014)); Ahrensfeld v. Stephens, 528 F.2d 193, 198 n.7 (7th Cir. 1975) ("[T]he application of zoning ordinances and regulations is distinctly a feature of local government which is outside the general supervisory power of federal courts."). The second Middlesex factor has been satisfied.

The final Middlesex factor asks whether the state-initiated civil enforcement proceeding offers the plaintiffs "an adequate opportunity for review of constitutional claims." Majors, 149 F.3d at 711 (citing Middlesex Cnty., 457 U.S. at 429). The Supreme Court has explained that "it is sufficient under Middlesex . . . that constitutional claims may be raised in state-court judicial review of the administrative proceeding." Ohio Civ. Rights Comm'n v. Dayton Christian Schools, Inc., 477 U.S. 619, 629 (1986). And even "when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." SKS & Assoc., Inc. v. Dart, 619 F.3d 674, 680 (7th Cir. 2010) (quoting Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 15 (1987)); see also Forty One News, 491 F.3d at 667 ("Although [the plaintiff] has a few veiled allusions to 'state tribunal bias and prejudice in prejudging a controversy,' it advances no reason to find that the state court did not provide an adequate opportunity for it to raise its constitutional challenges.").

The plaintiffs had the opportunity to—and did—raise their constitutional claims in the municipal court trial. Judge Keller's decision says that during the February 19, 2024 municipal court trial, the plaintiffs "advanced multiple theories in support of their defense," including "due process claims, constitutional claims or civil rights violations and equitable defenses." Dkt. No.

22

41-1 at 3. Although Judge Keller did not find the plaintiffs' constitutional claims to have merit—characterizing them as "misguided, unsupported and . . . lacking in legal foundation"—he explained that "[the plaintiffs] have the right to appeal pursuant to Sec. 800.14 of the Wisconsin Statutes." Id. at 3, 5. The plaintiffs did just that, appealing the municipal court judgment to the Racine County Circuit Court, where they again had the opportunity to argue their constitutional claims. The plaintiffs will not be forced to forfeit their civil rights if required to assert their constitutional claims in state court.

The plaintiffs asserted in their May 8, 2024 federal motion for discovery that the municipal court lacked equipment for plaintiff Sharon Mullen, who has a hearing disability, to hear the municipal court trial; that Judge Keller allowed only Sharon Mullen to question witnesses (she again had problems due to her hearing disability) and would not let Renee Mullen do so; that they were not able to re-call witnesses for Renee Mullen to cross-examine and that they were not allowed to make a concluding statement. Dkt. No. 43 at 11. They argued that the municipal judge "falsely charged" them and refused to accept evidence, and they assert that "[i]f it had been a fair trial, whereby if the evidence had been the ruling factor, Plaintiffs would have won." Id.

The appropriate way for the plaintiffs to seek relief from any errors they believe the Caledonia Municipal Court made is for them to appeal to the Racine County Circuit Court—which they have done. More to the point, the plaintiffs have not alleged that they did not have the opportunity to raise their constitutional claims in the municipal court civil enforcement proceeding. The Middlesex factors have been satisfied.

23

d.    Bad Faith Exception

There is another step to the analysis. The Supreme Court "has held that a district court should not abstain under Younger where . . . the pending state proceeding was motivated by a desire to harass or is conducted in bad faith  . . ." FreeEats.com, Inc. v. Indiana, 502 F.3d 590, 596 (7th Cir. 2007) (citing Huffman, 420 U.S. at 611). The amended complaint contains multiple conclusory allegations that the defendant acted in bad faith. The plaintiffs allege that by seeking to enforce Wis. Stat. §66.0425 and Racine Municipal Ordinance 82-91 in the municipal court enforcement action, the defendant's "exercise[] [of] differential treatment towards Plaintiffs was the result of prosecutorial discretion that was a vindicative action, illegitimate animus or ill will." Dkt. No. 33 at 5. They allege that "Defendant's prosecutors have never furnished any examples of Racine Code 82-91 and WI Stat. 66.0425 being forced upon any other contractor or owner for construction purposes" and assert that the decision to do so in the municipal enforcement action is "arbitrary and capricious."[4] Id. at 5, 27.

These conclusory allegations are not sufficient to invoke the bad faith exception to the Younger abstention doctrine.

> The Younger rule . . . requires more than a mere allegation and []
> more than a "conclusory" finding to bring a case within the
> harassment exception. It appears that such a finding must be
> supported by specific evidence from which it can be inferred that
> state officials have been enforcing the statute against the plaintiffs
> in bad faith and for purposes of harassment.

---

[4] Although one part of the amended complaint alleges that the state enforcement proceedings are the product of "prosecutorial vindictiveness," "illegitimate animus" or "ill will," another part alleges that the defendant's "misuse of Wisconsin Statute 66.0425 and Racine Municipal code 82-91 is obvious of the lack of proper training." Dkt. No. 33 at 6.

24

Grandco Corp. v. Rochford, 536 F.2d 197, 203 (7th Cir. 1976) (referencing Hicks v. Miranda, 422 U.S. 332 (1975)). See also Berrada Properties Management, Inc. v. Romanski, 608 F. Supp. 3d 746, 753-54 (E.D. Wis. 2022) ("Plaintiffs' evidence [of bad faith] is primarily adverbial and adjectival, which is to say conclusory and grounded in a subjective sense of aggrievement. This will not suffice.").

On the contrary, the letters and emails between the plaintiffs and the defendant leading up to the state-court enforcement action—which the plaintiffs filed as attachments to their original federal complaint, dkt. no. 1-1, in a document titled, "Rule 26(f) Report," dkt. no. 23, and again as attachments to their opposition to the defendant's pending motion to dismiss, dkt. no. 39-1—do not support the plaintiffs' claim that the defendant has treated the plaintiffs with "vindictiveness," "ill will" or "illegitimate animus." Before filing the enforcement action in municipal court, the defendant gave the plaintiffs two warnings regarding their obstruction of the public sidewalk; both letters reflect a polite tone. See Dkt. No. 1-1 at 12-14 (the defendant's November 29, 2022 warning letter), 21 (the defendant's January 11, 2023 warning letter). In their brief in opposition to the defendant's motion to dismiss the plaintiffs describe how one of defendant's attorneys allegedly offered to refund the plaintiffs for the incorrect permits they had purchased to complete their repair work. Dkt. No. 39 at 14. In summarizing his view of the proceedings, Caledonia Municipal Court Judge Keller stated that the plaintiffs "have been relentless in their claims that they have somehow been wronged, while the evidence is clear the City made cooperative efforts to bring them into compliance short of issuing a citation." Dkt. No. 41-1 at 4-5. The evidence shows that, rather than filing the enforcement action in bad faith, the defendant filed the action after its good-

25

faith efforts to amicably resolve the plaintiffs' unauthorized encumbrance of the public sidewalk proved futile.

e.    Conclusion

If the state-initiated enforcement proceeding *is* ongoing, <u>Younger</u> abstention would be appropriate. The court then would be required to decide whether dismissing the case or entering a stay was the proper course of action. <u>FreeEats.com</u>, 502 F.3d at 600 (citing <u>Majors</u>, 149 F.3d at 714). "The pivotal question in making this determination is whether any of the relief sought by the plaintiff in its federal action is unavailable in the state action." <u>Id.</u> (citing <u>Majors</u>, 149 F.3d at 714); <u>see also</u> <u>Green v. Benden</u>, 281 F.3d 661, 667 (7th Cir. 2002) ("A stay is appropriate when a plaintiff is foreclosed from bringing his damages claims in the state proceeding.") (citation omitted).

In their amended complaint, the plaintiffs request $120,000 in damages, which allegedly represents what they would have made as substitute teachers had they not had to correspond with the defendant via email and defend themselves in court. Dkt. No. 33 at 35. In their response to the defendant's motion to dismiss, they do not argue that the state court could not have provided the same relief they seek here. But it is not clear to the court that the plaintiffs could have obtained *damages* by raising their constitutional claim as an affirmative defense against the city's municipal enforcement action. Judge Keller did not specify whether the plaintiffs sought damages in defending the civil enforcement action, but it sounds as though they did not; Judge Keller said that they advanced "theories" of defense that included "due process claims" and "constitutional claims or civil rights violations." Dkt. No. 41-1 at 1. Nor has the court been able to find Wisconsin caselaw referencing authority to append a §1983 damages claim to a municipal enforcement action. Without

26

evidence that the plaintiffs sought damages in the municipal enforcement action or caselaw indicating that they could have done so, the appropriate course of action if the state case remained pending likely would have been for the court to stay the proceedings, rather than to dismiss.

Again, however, the court must dismiss for another reason, one that has nothing to do with abstention.

### 3. *Colorado River* Abstention

The defendants didn't raise it, but another abstention doctrine would have weighed in favor of this court abstaining while the municipal enforcement action (or any appeal of it) was pending: Colorado River abstention. Named after the decision that articulated the doctrine—Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976)—the doctrine "allows courts to conserve judicial resources by abstaining from accepting jurisdiction when there is a parallel proceeding elsewhere." Baek v. Clausen, 886 F.3d 652, 663 (7th Cir. 2018) (quoting Deb v. SIRVA, Inc., 832 F.3d 800, 814 (7th Cir. 2016)). The Supreme Court laid out factors for a court to consider in determining whether to abstain under the doctrine:

> "the court first assuming jurisdiction over the property"; "the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which jurisdiction was obtained by the concurrent forums."

Id. (quoting Colorado River, 424 U.S. at 818). The Seventh Circuit Court of Appeals has explained that it has adopted a two-part analysis to help lower courts decide whether Colorado River abstention is appropriate:

> "First, the court must determine whether the state and federal court actions are parallel." *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014). If the proceedings are parallel, the court must determine if abstention is proper by weighing ten non-exclusive factors. *Id.* These are:

(1) whether the state has assumed jurisdiction over the property;
(2) the inconvenience of the federal forum;
(3) the desirability of avoiding piecemeal litigation;
(4) the order in which jurisdiction was obtained by the concurrent forums;
(5) the source of governing law, state or federal;
(6) the adequacy of state-court action to protect the federal plaintiff's rights;
(7) the relative progress of state and federal proceedings;
(8) the presence or absent of concurrent jurisdiction;
(9) the availability of removal; and
(10) the vexatious or contrived nature of the federal claim.

*Id.* (quoting *Tyrer v. City of South Beloit, Ill.*, 456 F.3d 744, 754 (7th Cir. 2006)). "A district court's decision to stay federal proceedings pending the resolution of a state court action is reviewed under an abuse of discretion standard." *Id.*

Id. at 663-64.

There is no question that the municipal enforcement proceeding and this federal proceeding were parallel. The plaintiffs filed this federal lawsuit only three weeks after an assistant city attorney prepared a municipal complaint alleging that they had violated Section 82-91 of the City of Racine Municipal Code of Ordinances. That complaint asked the court to restrain the defendant from taking any action against them and to force the defendant to accept the permits they already had obtained as allowing them to leave the scaffolding in place. The federal forum—in Milwaukee—is less convenient to both parties (who are in Racine, more than twenty miles from Milwaukee). The existence of the parallel proceedings gave rise to a high risk of piecemeal litigation. Because the city's municipal enforcement complaint is not dated, the court cannot be sure, but it appears highly likely that the municipal court obtained jurisdiction before this federal court. The source of governing law for all but the Fourteenth Amendment claim is state/local. The municipal court case had progressed much further than this one (and now has progressed to its conclusion). It

28

would have made sense for the court to abstain under the <u>Colorado River</u> doctrine until the municipal court enforcement action was concluded. Practically speaking, that is what the court has done.

                4.    *Rooker-Feldman Doctrine*

Because it now appears that the municipal civil enforcement action is over, it appears that the court no longer needs to consider whether to "abstain." It now must consider whether the municipal court's decision precludes this court from granting the plaintiffs the relief they request here in federal court.

There is another federal abstention doctrine, called the <u>Rooker-Feldman</u> doctrine. The <u>Rooker-Feldman</u>[5] doctrine "bars federal district courts from hearing cases brought by state-court losers who complain of injuries caused by state-court judgments." <u>Hendrix v. Garcia</u>, Case No. 23-1980, 2024 WL 1104777, at *1 (7th Cir. March 14, 2024). "*Rooker-Feldman* stems from federal statutes that make the Supreme Court an appellate tribunal over state courts on questions of federal law, but that afford to federal district and circuit courts no similar power over state judgments." <u>Hood v. Little Rock Office of Child Support Enforcement</u>, Case No. 23-1777, 2024 WL 278909, at *1 (7th Cir. Jan. 25, 2024) (citing <u>Exxon Mobil Corp. v. Saudi Basic Industries Corp.</u>, 544 U.S. 280, 283 (2005)). "*Rooker-Feldman* bars federal review when a party seeks relief 'tantamount to vacating the state judgment.'" <u>Id.</u> (citing <u>Mains v. Citibank, N.A.</u>, 852 F.3d 669, 675 (7th Cir. 2017)). "Parallel state and federal litigation is proper as long as the state suit remains pending"—"the *Rooker-Feldman* doctrine applies only when a loser in state court files a federal suit seeking

---

[5] <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923); <u>D.C. Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983).

review and rejection of the state court's judgment." <u>Bryant v. Chupack</u>, 93 F.4th 1029, 1032 (7th Cir. 2024) (citing <u>Exxon Mobil</u>, 544 U.S. at 291-94).

<u>Rooker-Feldman</u> is not a good fit here. Although it appears that in their most recent filing—their motion for discovery—the plaintiffs are arguing that the municipal court decision was flawed and wrongly decided (and they are asking the court to give them more time to collect information to prove it), the court already has discussed the fact that the plaintiffs filed this federal case around the same time that the defendant filed the municipal enforcement proceeding. At the time the plaintiffs filed this case, then, they were not "state-court losers," because they had not yet lost.

C.    <u>Preclusion</u>

So—the <u>Younger</u> and <u>Colorado River</u> abstention doctrines no longer apply because there no longer appears to be a pending municipal enforcement action. <u>Rooker-Feldman</u> does not deprive this court of jurisdiction because the plaintiffs were not yet "state-court losers" when they filed their federal lawsuit. The next question is whether the decision in the municipal enforcement action has preclusive effect in federal court. There are two kinds of "preclusion"— claim preclusion and issue preclusion.

"The doctrine of claim preclusion provides that a federal judgment on the merits in one action bars parties from relitigating any claim that arises out of the same relevant facts, transactions, or occurrences." <u>Kruckenberg v. Harvey</u>, 279 Wis.2d 520, 530 (Wis. 2005) (citations omitted). Under Wisconsin law, there are three elements to claim preclusion: "(1) identity between he parties or their privies in the prior and present suits; (2) prior litigation resulted in a final judgment on the merits by a court with jurisdiction; and (3) identity of the causes of action in the two suits." <u>Id.</u>

30

The first element is met here. The parties to the municipal enforcement action were the City of Racine and the plaintiffs. See Dkt. No. 41-1 at 1. The parties to this federal lawsuit are the plaintiffs and the City of Racine. Dkt. No. 33. As the court has explained, it appears fairly certain that the prior litigation—the municipal enforcement action—has resulted in a final judgment on the merits by a court with jurisdiction. The Caledonia court ruled in favor of the City of Racine, the plaintiffs appealed to the Racine County Circuit Court and that court dismissed the appeal.

It is not so clear, however, that all the causes of action are the same in the two suits. As the court has explained, the only claim left in this federal suit is the plaintiffs' Fourteenth Amendment claim. The court cannot tell from Judge Keller's decision whether the "due process," "constitutional" and "civil rights" claims that the plaintiffs raised as defenses in the municipal case are the same as the claims the plaintiffs have raised in the amended complaint here in federal court, because Judge Keller did not identify the source of the plaintiffs' constitutional defenses. The court cannot determine whether the plaintiffs raised the Fourteenth Amendment's equal protection clause in the municipal enforcement action (and that is the claim that they have tried to state in the federal case). So claim preclusion does not appear to apply.

"Issue preclusion addresses the effect of a prior judgment on the ability to re-litigate an identical issue of law or fact in a subsequent action." Mrozek v. Intra Financial Corp., 281 Wis.2d 448, 463 (Wis. 2005) (citing Northern States Power Co. v. Bugher, 189 Wis.2d 541, 550-51 (Wis. 1995)). "In order for issue preclusion to be a potential limit on subsequent litigation, the question of fact or law that is sought to be precluded actually must have been litigated in a previous action and be necessary to the judgment." Id. at 463-464 (citing Town

31

of Delafield v. Winkelman, 269 Wis.2d 109 (Wis. 2004); Michelle T. v. Crozier, 173 Wis.2d 681, 687 (Wis. 1993)).

The amended federal complaint appears to assert a "class of one" equal protection claim under the Fourteenth Amendment. Dkt. No. 33 at 4. It also asserts that the defendant was "deliberately indifferent" to the plaintiffs' rights and that the defendant's employees were "inadequately trained" by the defendant. Id. And it asserts that Wis. Stat. §66.0425(1) violates "42 US Code 1983 which guarantees equal rights under the law involving enforcement of contracts." Id. at 33. As the court has explained, it cannot determine whether the identical issues were litigated in the municipal enforcement action because Judge Keller did not state the source of the plaintiffs' constitutional defenses. It seems unlikely that in a trial that lasted a few hours, the constitutional claims the plaintiffs seek to raise here in federal court were fully litigated. So claim preclusion does not appear to apply.

     D.    <u>Failure to State a Claim</u>

That leaves the defendant's final argument in support of dismissal—that the amended complaint does not state a claim.

A Rule 12(b)(6) motion to dismiss for failure to state a claim "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7, 570 F.3d 811, 820 (7th Cir. 2009). "To survive a motion to dismiss, a complaint must 'state a claim to relief that is plausible on its face.'" Zemeckis v. Global Credit & Collection Corp., 679 F.3d 632, 634–35 (7th Cir. 2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim satisfies this pleading standard when its factual allegations 'raise a right to relief above the speculative level.'"

<u>Zemeckis</u>, 679 F.3d at 635 (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555–56 (2007)).

"A Rule 12(b)(6) motion tests 'the legal sufficiency of a complaint,' as measured against the standards of Rule 8(a)." <u>Gunn v. Continental Cas. Co.</u>, 968 F.3d 802, 805 (7th Cir. 2020) (citing <u>Runnion v. Girl Scouts of Greater Chi. and Nw. Ind.</u>, 786 F.3d 510, 526 (7th Cir. 2015)). When evaluating a motion to dismiss under Rule 12(b)(6), the court "'construe[s] the complaint in the light most favorable to plaintiff, accept[s] all well-pleaded facts as true, and draw[s] reasonable inferences in plaintiff's favor.'" <u>Divane v. Nw. Univ.</u>, 953 F.3d 980, 987 (7th Cir. 2020) (quoting <u>Taha v. Int'l Bhd. of Teamsters, Local 781</u>, 947 F.3d 464, 469 (7th Cir. 2000)).

Courts engage in a two-step process when analyzing the sufficiency of a complaint. <u>See</u> <u>McCauley v. City of Chi.</u>, 671 F.3d 611, 616 (7th Cir. 2011). First, the court must "accept the well-pleaded facts in the complaint as true" while separating out "legal conclusions and conclusory allegations merely reciting the elements of the claim." <u>Id.</u> (citing <u>Iqbal</u>, 556 U.S. at 680–81). Second, "[a]fter excising the allegations not entitled to the presumption [of truth], [the court must] determine whether the remaining factual allegations 'plausibly suggest an entitlement to relief.'" <u>McCauley</u>, 671 F.3d at 616 (quoting <u>Iqbal</u>, 556 U.S. at 681). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 556 U.S. at 679 (citation omitted).

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. <u>Iqbal</u>, 556 U.S. at 678. In this context,

33

"plausible," as opposed to "merely conceivable or speculative," means that the plaintiff must include "enough details about the subject-matter of the case to present a story that holds together." Carlson v. CSX Transp., Inc., 758 F.3d 819, 826-27 (7th Cir. 2014) (quoting Swanson v. Citibank, N.A., 614 F.3d 400, 404-05 (7th Cir. 2010)). The court asks whether the things could happen—not whether they did happen. Id. at 827. "It is the defendant's burden to establish the complaint's insufficiency." Gunn, 968 F.3d at 806 (citing Yeksigian v. Nappi, 900 F.2d 101, 104 (7th Cir. 1990)). The plaintiff does not bear the burden of defeating a Rule 12(b)(6) motion; the sole focus is on the allegations in the complaint. Brown v. Budz, 398 F.3d 904, 914 (7th Cir. 2005).

The amended complaint says that the plaintiffs are suing under 42 U.S.C. §1983, "with respect to the equal protection clause suspect classifications of the typical use of equal protection when the Plaintiff is a member of a class which has been discriminated against." Dkt. No. 33 at 4. To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived her of a right secured by the Constitution or the laws of the United States, and that whoever deprived her of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

The amended complaint asserts that "there is such a thing as a Class of One Equal Protection Case," which it describes as a situation in which a defendant "allegedly treats Plaintiff in a manner that's very different from the

34

way others similarly situated, are treated differently and there is no rational basis for doing, it's arbitrary and capricious." Dkt. No. 33 at 4. It alleges that the plaintiffs are "using the 14th Amendment Equal Protection Clause, Classification of One where Plaintiffs allege, they have been intentionally treated differently from others similarly situated and that there is no rational basis for the different treatment." Id. at 5. It asserts that the defendant and its officials "exercised differential treatment towards Plaintiffs was the result of prosecutorial discretion that was a vindictive action, illegitimate animus or ill will;" it maintains that the plaintiffs are not required to prove causation or give a reason why the plaintiffs were treated differently. Id.

These allegations sound like a "class-of-one" claim under the Equal Protection Clause of the Fourteenth Amendment. See, e.g., Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Engquist v. Oregon Dep't of Ag., 553 U.S. 591, 601 (2008). That is how the defendant reads them, too; it argues that because the plaintiffs have not alleged that they are members of a protected class, they can proceed only under a "class-of-one" equal protection theory.

Section 1 of the Fourteenth Amendment to the Constitution prohibits any state from denying "to any person within its jurisdiction the equal protection of the laws." The Seventh Circuit has explained that this clause is "most familiar as a guard against state and local government discrimination on the basis of race, national origin, sex, and other class-based distinctions." Geinosky v. City of Chicago, 675 F.3d 743, 747 (7th Cir. 2012) (citations omitted). But, the appellate court has explained that the clause "has also come to be understood to protect individuals against purely arbitrary government classifications, even when a classification consists of singling out just one person for different treatment for arbitrary and irrational purposes." Id. To

35

state a "class-of-one" equal protection claim, a plaintiff must allege that she was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id. (quoting Engquist, 553 U.S. at 601). "One element of a proper class-of-one claim is a wrongful act that necessarily involves treatment departing from some norm or common practice." Id. (citing McDonald v. City of Winnetka, 371 F.3d 992, 1009 (7th Cir. 2004)). "The classic class-of-one claim is illustrated when a public official, 'with no conceivable basis for his action other than spite or some other improper motive . . . comes down hard on a hapless private citizen.'" Swanson v. City of Chetek, 719 F.3d 780, 784 (7th Cir. 2013) (quoting Lauth v. McCollum, 424 F.3d 631, 633 (7th Cir. 2005)).

> This improper motive is usually covert, so courts first look to eliminate all proper motives. If there was no rational basis for the treatment of the plaintiff, then the motives must be irrational and improper. *See Vill. of Willowbrook*, 528 U.S. at 564-65 . . . . To achieve clarity, courts look to the treatment of similarly-situated individuals: if all principal characteristics of the two individuals are the same, and one received more favorable treatment, this may show there was no proper motivation for the disparate treatment. *See Geinosky v. City of Chicago*, 675 F.3d 743, 748 (7th Cir. 2012) ("When the parties raise a serious question whether differences in treatment stem from a discriminatory purpose or from a relevant factual difference, the key evidence is often what was done in the investigation or prosecution of others in similar circumstances.")

Id.

"The class-of-one theory of equal protection 'presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review.'" Reget v. City of La Crosse, 595 F3d 691, 695 (7th Cir. 2010) (quoting Engquist, 553 U.S. at 605). "To be considered 'similarly situated,' the class-of-one challenger and his comparators must be '*prima facie* identical in all relevant respects or

36

directly comparable . . . in all material respects." United States v. Moore, 543 F.3d 891, 896 (7th Cir. 2008) (quoting Racine Charter One, Inc. v. Racine Unified Sch. Dist., 424 F.3d 677, 680 (7th Cir. 2005); Purze v. Vill. of Winthrop Harbor, 286 F.3d 425, 455 (7th Cir. 2002)). "It is clear that similarly situated individuals must be very similar indeed." McDonald, 371 F.3d at 1002.

The amended complaint alleges that the defendant "has treated Plaintiff in a manner that's very different from the way others similarly situated, are treated differently and there is no rational basis for doing, it's arbitrary and capricious." Dkt. No. 33 at 7. The plaintiffs allege that they have been treated differently "from other similar contractors," arguing that "[n]o other contractors have been told to build a safety barrier, issued the building permit for the safety barrier, and later told it's an encroachment and needs to be taken down." Id. They make numerous allegations that "no other" contractor has been required to do some of the things they say the defendant required them to do, and that "other owners" have been allowed to do things they were not. Id. at 7-8. They then described others whom they allege the defendant treated differently.

First, they list 500 Main Street. Id. at 8, 28.[6] They say that this location is owned by Dominion Properties for a hotel, and assert that "Dominion Properties does have an agreement with the Defendant, City of Racine for removable planters, a bicycle rack, an overhanging sign, overhanging awnings and a geo-thermal well under WI Statute 66.0425." Id. at 8-9. They assert that the contractor "was not ordered" to forfeit construction permits. Id. at 8-9. From this very sparse information, the court cannot conclude that this

_____

[6] The amended complaint asserts that the plaintiffs attached the street storage permit, street closing permit and photos for this property to the amended complaint. Dkt. No. 33. They did not.

37

location, or entity, is not "*prima facie* identical in all relevant respects or directly comparable in all material respects" to the plaintiffs. The plaintiffs constructed a large scaffolding on a city sidewalk—not removable planters, or a bicycle rack, or signs and awnings overhead.

The plaintiffs next list 110 7th Street, which they say was issued a permit for a chain-link fence. Id. at 9, 29. This description is even more sparse, and again, the court cannot conclude that putting a chain-link fence up around an area is "*prima facie* identical in all relevant respects" to building a large scaffolding on a city sidewalk. Similarly, the plaintiffs listed "[p]roperties located at 436, 438 and 440 Main Street: Haymarket Square Building," which they say erected a chain-link fence. Id. Based on the very sparse information provided, this is not a viable comparator for the purpose of a class-of-one equal protection claim. In fact, it is hard to imagine how the plaintiffs could identify a similarly situated person, given the lengthy and complicated chain of events that the plaintiffs allege shows that their equal protection rights were violated. The amended complaint's description of these events covers seven pages of the amended complaint. Dkt. No. 33 at 11-18.

Because the amended complaint does not identify any "similarly situated" persons or entities who were treated differently than the plaintiffs, it does not state a class-of-one equal protection claim.

There is another problem with the amended complaint. Section 1983 allows a plaintiff to sue a "person" who violates her constitutional rights under color of state law. The defendant, of course, is not a person—it is a municipality. In Monell, 436 U.S. at 690, the U.S. Supreme Court held that Congress intended municipalities and local governments to be included in the definition of "persons" under §1983 "where . . . the action that is alleged to be

38

unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." In the amended complaint, the plaintiffs allege that "[t]he Defendant, City of Racine has a policy or custom and practice to not list ending dates on their Building Permits." Dkt. No. 33 at 18. But even if that were true, not listing end dates on building permits does not violate the Constitution. The court already has found that the plaintiffs have not stated a claim for a class-of-one equal protection violation, so the plaintiffs cannot state a Monell claim that such a violation was caused by a policy, custom or practice of the defendant. A municipal defendant "cannot be liable under Monell unless it violated a constitutional guarantee." Alexander v. City of South Bend, 433 F.3d 550, 557 (7th Cir. 2006) (citing Contreras v. City of Chicago, 119 F.3d 1286, 1294 (7th Cir. 1997)).

The amended complaint also alleges that the defendant and its officials have been "deliberately indifferent" to the plaintiffs' rights and that the defendant's employees/officials were inadequately trained. Dkt. No. 33 at 5. This is a form of a Monell claim; a municipality can be held liable for failure to train employees, *if* the inadequate training "amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such shortcomings be properly thought of as a city 'policy or custom' that is actionable under § 1983." Id. at 389. "What separates this liability from traditional *respondeat superior* liability is a known pattern of tortious conduct demonstrating the need for additional training, 'rather than a one-time negligen[ce].'" Flores v. City of South Bend,

39

997 F.3d 725, 731 (7th Cir. 2021) (quoting <u>Bd. of Cnty. Commisioners of Bryan Cnty.. Okla. v. Brown</u>, 520 U.S. 397, 407-08 (1997)). The court has concluded that the plaintiffs have not stated a claim for a constitutional violation, so it follows that they have not stated a claim that city employees engaged in a pattern of tortious conduct demonstrating a need for further training, or that the city was deliberately indifferent to the rights of the persons with whom city employees came into contact.

Finally, the amended complaint alleges that "Wisconsin Statute 66.0425(1)(1)" violates §1983, which the plaintiffs allege "guarantees equal rights under the law involving enforcement of contracts." Dkt. No. 33 at 33. Section 1983 does not guarantee equal rights under the law regarding enforcement of contracts; the statute simply allows someone whose civil rights have been violated by a person acting under color of state law to sue that person. As the court explained to the plaintiffs at the December 13, 2023 hearing, there *is* a statute that governs the right to make and enforce contracts: 42 U.S.C. §1981 guarantees all persons in the United States "the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . ." The court dismissed the plaintiffs' §1981 claim raised in the original complaint; the amended complaint does not allege a violation of §1981, and it does not—and cannot—state a claim for one because, as the plaintiffs conceded at the December 2023 hearing, they do not have a racial discrimination claim.

If the plaintiffs meant to allege that Wis. Stat. §66.0425 violates the Constitution, they have not stated a claim. A party challenging the constitutionality of a statute must contend with the fact that if a statute does

40

not involve fundamental rights or "proceed along suspect lines," it is presumed constitutional and subject to only rational basis review. See, e.g., Heller v. Doe By Doe, 509 U.S. 312, 319 (1993). The plaintiffs have not complied with Fed. R. Civ. P. 5.1(a), which requires anyone who files a pleading "drawing into question the constitutionality of a . . . state statute" to file a notice of the constitutional question and serve that notice on the state's attorney general. They have not explained how the statute violates the Constitution. It is not even clear that the defendant—the City of Racine—is the appropriate defendant to defendant against a challenge to the constitutionality of a Wisconsin statute.

## V. Conclusion

The court **GRANTS** the defendant's motion to dismiss on the ground that the amended complaint fails to state a claim for which a federal court may grant relief. Dkt. No. 34.

The court **DENIES AS MOOT** the plaintiffs' motion for a temporary restraining order. Dkt. No. 2.

The court **DENIES AS MOOT** the plaintiffs' motion for discovery. Dkt. No. 43.

The court **ORDERS** that this case is **DISMISSED**. The clerk will issue judgment accordingly.

Dated in Milwaukee, Wisconsin this 12th day of September, 2024.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**